### HAINES v. THOMPSON et al.

(Common Pleas of New York City and County, General Term. February 6, 1893.)

1. STATUTE OF FRAUDS—CONTRACT FOR ONE YEAR.
   A contract of employment of plaintiff as an actress, the employment to endure for "thirty-five or forty weeks, perhaps a year," creates no obligation to employ for a year, and is not within the statute of frauds.

2. BREACH OF CONTRACT—EVIDENCE OF CUSTOM.
   It appeared on trial, by plaintiff's admission, that she was discharged on two weeks' notice. The complaint alleged that she was employed by defendant as an actress for a certain season, and that she was wrongfully discharged. The answer denied this, and defendant testified that when he engaged plaintiff he told her it was on "two weeks' notice on either side," which phrase had a well-known meaning in the theatrical profession. *Held*, that defendant was not precluded from testifying to the meaning of "two weeks' notice on either side," because he did not specially plead his right to discharge plaintiff on two weeks' notice; such evidence tending to disprove the alleged breach of contract.

3. SAME.
   The error of excluding defendant's testimony as to the meaning of the phrase in question was not cured by his being permitted to testify subsequently to his own understanding of the phrase, since that did not show plaintiff's understanding of it, and there was no evidence what her understanding of it was; nor by a charge to the jury that "defendant testifies positively that he told plaintiff it [her employment] was on two weeks' notice. If you find that it be so, of course you find that that was the contract, not a custom."

Appeal from city court, general term.

Action by Annie Haines against Denman Thompson and George W. Ryer to recover damages for breach of a contract for the employment of plaintiff as an actress by her alleged wrongful discharge. From a judgment of the general term of the city court of New York affirming a judgment for plaintiff entered on a verdict, and affirming an order refusing a new trial, (20 N. Y. Supp. 184,) defendants appeal. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Edward Browne and John C. Sheehan, for appellants.
David Gerber, for respondent.

BISCHOFF, J. An order of the city court of New York which refuses a new trial is not appealable to this court. Code Civil Proc. § 3191; Wilmore v. Flack, 96 N. Y. 512; Smith v. Pryor, 16 Daly, 169; 9 N. Y. Supp. 636. The contract of employment was made in June, 1888; the services thereunder to commence on the 23d day of August following. It was oral, and, construing the evidence most favorably for defendants, was to the effect that the employment should endure for

"thirty-five or forty weeks, perhaps a year." No obligation was thereby created to continue the employment for a year, and hence the contract was not within the statute of frauds, and was not required to be in writing. Blake v. Voigt, (N. Y. App. filed May 31, 1892,) 31 N. E. Rep. 256. But we are of the opinion that the trial court erroneously excluded evidence offered by defendants which tended to show that the words "two weeks' notice on either side" had a definite and well-understood meaning in the making of contracts for theatrical services, and that plaintiff so understood them. In Hannay v. Zerban, 16 Daly, 372, 11 N. Y. Supp. 577, we held that parol evidence of the meaning of a somewhat similar phrase was inadmissible to add to the contract. But that was the case of a written contract, and so is inapplicable here. Nor was the error excluding the evidence in the present case cured because defendant Ryer was subsequently permitted to testify to his own understanding of the phrase, since that did not show plaintiff's understanding of it; or because the court charged the jury that "defendant testifies positively that he told her [plaintiff] it was on two weeks' notice. If you find that to be so, of course you find that that was the contract, not a custom." No evidence which tended to show that plaintiff understood the phrase in any particular sense was permitted to go to the jury. It appeared on the trial, from her own admission, that plaintiff was discharged upon a previous notice of two weeks. The complaint alleged that plaintiff was employed for the season commencing on or about August 23, 1888, and ending on or about June 1, 1889, and that she was wrongfully discharged. The answer denied this. Defendant Ryer, with whom the contract was made, testified that at the time of making it he said to plaintiff: "You must become engaged here like all the rest of the company; two weeks' notice either side." He further testified that the phrase "two weeks' notice either side" had a well-known meaning in the theatrical profession, and the question, "What does it mean?" was excluded, on the ground that the right to terminate the employment upon two weeks' notice was not specifically pleaded by the answer. It is, however, a well-settled rule of pleading that under a denial the defendant will be permitted to give in evidence anything which disproves the allegations of the complaint, (O'Brien v. McCann, 58 N. Y. 373,) and by showing what the contract really was, that it was not as alleged in the complaint, (Marsh v. Dodge, 66 N. Y. 533; Bien v. Abbey, [Com. Pl. N. Y.] 13 N. Y. Supp. 286; Wheeler v. Billings, 38 N. Y. 263; Hier v. Grant, 47 N. Y. 281.) Evidence that "two weeks' notice either side" was part of the contract tended to disprove that the contract was as alleged in the complaint, and evidence that this phrase was understood by both parties to mean that either party was at liberty to terminate it upon two weeks' previous notice to the other certainly tended to disprove the alleged breach of contract on defendants' part,—the wrongful discharge of the plaintiff. The attempted proof of the meaning of the phrase "two weeks' notice either side" was not to show that there was a custom in the theatrical profession whereby either of the parties could, upon two weeks' notice to the other, terminate any contract, but that, if defendants' version of the contract be true,

a seemingly obscure part of it was understood by both contracting parties in a particular sense. The evidence offered and excluded thus tended to establish an integral part of the contract. The judgment appealed from should be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.